IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: | : | Case No. 1:21-cv-00919 |
| | : | |
| Ex Parte Application Pursuant to 28 U.S.C. §1782 for an Order to Take Discovery of Brian King for Use in a Foreign Proceeding | : : : : | Filed EX PARTE |

## DECLARATION OF ROBERT K. CAMPBELL IN SUPPORT OF APPLICATION PURSUANT TO 28 U.S.C. 1782 FOR AN ORDER TO TAKE DISCOVERY OF BRIAN KING FOR USE IN A FOREIGN PROCEEDING

I, Robert K. Campbell, declare and state as follows:

1. I am a solicitor of the Senior Courts of England Wales. I was admitted to practice in England and Wales in 1994 and I have practiced continuously in England since March 1994. My practice covers many areas of civil litigation, including disputes relating to the financial services sector.

2. I am submitting this Declaration in support of: (1) Oak Trust, (2) Acorn Trust, (3) Eagle Trust, (4) Duffy Trust, (5) Robert J. Parfet Living Trust, (6) Geluk Global Fund Limited SAC (a company incorporated in the Bahamas), (7) Migration Investments, LLC (a Colorado, US LLC ), (8) Boustrophedon International Ltd (a company incorporated in Hong Kong), (9) Michael R. Shea, (10) Erin Shea, (11) Angela Ling, (12) Fuhua Ling, (13) Philip Bullock, (14) Lifang Liu, (15) Justin Payne, (16) Michael Dietzen, (17) Kimberly J. Dietzen, (18) Brian Sly, (19) David K. Sly, (20) Gregory Sly, (21) Karen Sly, (22) Nelson Sly, (23) Helen S. Sly, (24) Sly Family Trust, and (25) Tamara A. Sly Separate Property Trust's (together the "Applicants") Application Pursuant to 28 U.S.C. § 1782 for an Order to Take Discovery of Brian King ("King") for Use in a Foreign Proceeding (the "Application").

1

3. Applicants anticipate initiating a proceeding as claimants in the High Court of England and Wales in London, England (the "U.K. Proceeding").

4. Applicants have each suffered loss as a result of the wrongful conduct of Equiti Capital UK Limited ("Equiti UK") in its facilitation and concealment of a fraudulent Forex trading scheme ("the Mediatrix Fraud") operated by Mediatrix Capital Inc. ("Mediatrix") and Blue Isle Markets Inc. ("Blue Isle 1") and its successor, Blue Isle Markets Ltd. ("Blue Isle 2") (collectively referred to as "Blue Isle"), in which Applicants and others invested.

5. The Mediatrix Fraud involved multiple components. First, Blue Isle / Mediatrix fraudulently induced investment through material misrepresentations, including regarding the profitability of their trading history, the value of their assets under management, having audited trading results, and their regulated status. Then, Blue Isle / Mediatrix fraudulently induced investors to maintain and/or increase their investments by falsifying investors' account statements to show phantom profits and making Ponzi-like payments to investors who opted to cash out their "profits," all in an effort to prop-up the façade of profitable trading and perpetuate the fraud. Ultimately, Blue Isle / Mediatrix's fraudulent scheme resulted in massive trading losses of the funds that were invested in order to further perpetuate the fraud and allowed Blue Isle / Mediatrix to misappropriate funds—both directly and through taking unearned performance fees based on falsified trading results.

6. On the basis of currently available information, the relationship between Equiti UK and Blue Isle began in or around February-March 2016 when under its direction and supervision, Equiti UK's wholly-owned subsidiaries in the U.S. and Armenia entered into agreements with Blue Isle. The relationship between Blue Isle and Equiti UK was subsequently formalized in a customer agreement dated June 12, 2007. From February-March 2016 until September 2019,

Equiti UK provided brokerage services, trade execution and margin services to Blue Isle for which it appears to have earned and claimed more than $12 million in circumstances where it knew, or alternatively should have known, that Mediatrix and Blue Isle were operating a fraudulent scheme of which Applicants were among the victims. Further or alternatively, Equiti UK failed to perform adequate due diligence both initially and on an ongoing monitoring basis, which had they performed—as they represented to investors that they did—would have revealed "red flags" that became more numerous and severe with the passage of time and which should have alerted it to the fraudulent nature of Blue Isle's scheme. Equiti UK should have inquired further into Blue Isle / Mediatrix in the face of the escalating "red flags," including for example, when Blue Isle told Equiti UK it had $25 million in assets and was trading "$15 billion+" annually. In sum, the Mediatrix Fraud was made possible by either Equiti UK's knowing acquiescence or its deliberate blindness.

7. As a result, on the basis of the information currently available, Applicants intend to pursue claims against Equiti UK pursuant to the laws of England and Wales for damages and/or equitable compensation under various legal theories stemming from Equiti UK's role in connection with Blue Isle / Mediatrix's fraud.

8. Applicants' efforts to resolve the claim without initiating proceedings in the High Court in London have been unsuccessful. Applicants have retained a barrister in the U.K. to assist them and their counsel based in the United States with bringing the anticipated litigation before the High Court of Justice in London, England, U.K.

9. Accordingly, on November 26, 2020, Applicants finalized and served upon Equiti UK a "Letter of Claim" that detailed the factual and legal bases supporting their claims against Equiti UK pursuant to the laws of England and Wales for damages and/or equitable compensation

under various legal theories stemming from Equiti UK's role in connection with Blue Isle / Mediatrix's fraud.

10. Applicants anticipate that they will seek approximately $31,817,245.06 from Equiti UK on the alleged grounds that Equiti UK's conduct resulted in Applicants sustaining a total loss of their net principal investments, less any redemption amounts received.

11. Under the Civil Practice Rules 1998, which govern procedure in the High Court ("the CPR"), the delivery of a "Letter of Claim" is a necessary precursor to the commencement of litigation, as stipulated by the applicable pre-action protocol. Following service of the Letter of Claim, the recipient, being the prospective defendant, has a reasonable period in which to respond. What is considered reasonable is dependent on the complexity of the dispute, the breadth of the underlying factual matrix and any other relevant factors. The response must acknowledge the Letter of Claim, either accepting it or, alternatively, responding in detail as to the reasons why the claim is not accepted, including providing an explanation of which facts and parts of the claim are disputed.

12. On February 16, 2021, Equiti UK responded in a letter, through its counsel Linklaters, denying any liability and arguing, among other grounds, that it did not know about the fraud taking place through the Blue Isle accounts held at Equiti UK and defying Applicants to prove otherwise legally and factually. As a defense, Equiti UK states it will not stipulate to the veracity of the SEC's claims regarding the underlying Mediatrix Fraud but rather will put Applicants to their proof regarding that fraud.

13. King is not expected to be a party to the anticipated U.K. Proceeding.

14. Rather, upon information and belief, King is in possession of information and/or documents relevant to Applicants' anticipated claims in the U.K. Proceeding.

15. King is the former Chief Compliance Officer at Blue Isle. In September 2019, King gave deposition testimony in litigation initiated by the United States Securities and Exchange Commission against Mediatrix and Blue Isle regarding the fraud that Applicants assert Equiti UK facilitated.[1] At his deposition, King testified regarding (1) Equiti's generation and provision of monthly statements to investors; (2) Equiti's provision of account statements to Grant Thornton, who Mediatrix falsely claimed audited their returns; and (3) face-to-face meetings between Blue Isle and Equiti to discuss, among other things, Equiti's provision of liquidity to Blue Isle and Equiti's assistance in soliciting investors for Mediatrix.

16. Accordingly, King possesses information and/or documents regarding Equiti UK's facilitation and concealment of the Mediatrix Fraud that is central to Applicants' anticipated claims in the U.K. Proceeding.

17. It is expected that the documents and testimony elicited from King will be admissible in the U.K. Proceeding and are not barred by any applicable law or local court rules.

18. U.K. litigation and local court rules contemplate that parties to proceedings within that jurisdiction will engage in discovery and allow for the submission of documentary evidence.

19. The U.K. Court, however, does not have jurisdiction over King, who resides in the United States, and is not under the control of Equiti UK.

20. No judicial authority in the U.K. has rejected any effort by Applicants to obtain the requested documents and other materials.

---

[1] *See United States Securities and Exchange Commission v. Mediatrix Capital Inc. et al*, No. 1:19-cv-02594-RM-SKC (D. Colo. filed Sept. 12, 2019).

I declare, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed this 18th day of February 2021.

Robert K. Campbell

US.131216948.05